53 F.3d 328
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Howard CRUMPE, Jr.; Thomas Jennings; Claudia L. Simms,
Individually and as personal representative of Rodney L.
Simms; Cheryl L. Horne, Mother and Next Friend of Rhonique
L. Horner; Rhonique L. Horner, a minor; Rhonda Simms;
Cynthia Sutton, Mother and Next Friend of Jam Sutton; Jam
Sutton, a minor; William Fair, Plaintiffs-Appellants,
v.
James BOWMAN; Lennie Sage; Prince George's County,
Maryland; Dwayne Preston; Peter Ruffin; Steve
Bigelow, Defendants-Appellees.
 No. 94-1717.
 United States Court of Appeals, Fourth Circuit.
 Argued April 3, 1995.
Decided May 3, 1995.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Alexander Harvey II, Senior District Judge. (CA-92-2723-H, CA-92-3195-H)
 ARGUED: Paris Authre Artis, Hyattsville, MD, for Appellants.
 Jay Heyward Creech, Paul M. Mayhew, Upper Marlboro, MD, for Appellees.
 D.Md.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, ERVIN, Chief Judge, and WILKINSON, Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants brought this Sec. 1983 action against Prince George's County, Maryland, and two Prince George's County police officers. By consent of the parties, the case was bifurcated, with the first trial limited to the claims against the officers. This appeal follows a defense verdict at the first trial and the district court's subsequent dismissal of all claims against the County.
 
 
 2
 * This case arises from a fatal shooting that occurred on the evening of September 28, 1991. On the night in question, Officers James Bowman and Lennie Sage, Appellees here, were on foot patrol in the 7700 block of Bender Road in Landover, Maryland. This section of Landover is beset with illegal drug activity, and the officers were attempting to set up surveillance for drug transactions. Officers Bowman and Sage were talking to some individuals in front of a house when three men--the decedent, Rodney Simms, and two of Simms's friends, Appellants Howard Crumpe and Thomas Jennings--emerged from Simms's house across the street. Jennings and Simms approached the officers and a verbal confrontation ensued in which Simms threatened to "light up" (shoot) the policemen. As instructed by the officers, Jennings and Simms then retreated onto Simms's property, where Crumpe was waiting.
 
 
 3
 What happened next was the subject of sharp disagreement at trial. The officers testified that, intending to conduct a patdown search for weapons, they entered the Simms property and instructed Crumpe, Jennings, and Simms to place their hands on a car parked in the driveway. Crumpe and Jennings complied, but Simms, who had continued to curse the officers in a loud and extremely profane manner, wheeled around and began swinging at Officer Sage. When Officer Bowman came to his partner's aid, Simms pulled a knife and lunged forward. A struggle ensued. Officer Bowman fired his gun several times, but Simms wrestled the officer to the ground. Simms dropped his knife in the melee, but continued to struggle and reach for it. After a second volley of shots from Officer Bowman, Simms finally stopped reaching for the knife. Officer Bowman then recovered the knife and left the scene with another officer who had arrived to provide backup.
 
 
 4
 According to Crumpe and Jennings, Simms complied with the officers' directive to kneel in his driveway, but protested that the officers had no right to enter his property. Officer Bowman, angered by Simms's comments, then began beating Simms with his flashlight, and shot Simms as he attempted to run away. Both Crumpe and Jennings testified that after Simms fell to the ground, Officer Bowman stood over his body and fired additional shots. Crumpe and Jennings denied seeing Simms menace the officers with a knife.
 
 
 5
 Rodney Simms died from gunshot wounds inflicted by Officer Bowman. An autopsy revealed the presence of a significant amount of phencyclidine (PCP) in his system.
 
 
 6
 Crumpe, Jennings, and Simms's family members sued the officers and Prince George's County under 42 U.S.C. Sec. 1983 and state law. By agreement of the parties, the litigation was bifurcated so that the claims against the individual officers were tried first, with the County's liability to be determined at a subsequent trial. Before trial, the district court granted the officers' motion for summary judgment on a number of the state law claims. Thus narrowed, the case was tried to a jury, which returned a verdict in favor of the officers. In light of the verdict, the district court dismissed all claims against the County. This appeal followed.
 
 II
 
 7
 Appellants' principal contention is that the district court improperly dismissed their claims against the County. We disagree. The fate of the claims against the County is controlled by Los Angeles v. Heller, 475 U.S. 796 (1986). Heller was an action brought under 42 U.S.C. Sec. 1983 against two Los Angeles police officers, the City of Los Angeles, and two members of the Los Angeles Police Commission. As in this case, the district court bifurcated the proceedings and conducted an initial trial to resolve the claims against one of the individual officers.[1] Id. at 797. The jury returned a verdict indicating that the officer did not violate the Constitution. The Supreme Court held that in light of the jury's finding, the claims against the City and the Police Commission could not go forward:
 
 
 8
 [N]either Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978), nor any of our other cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer has inflicted no constitutional harm.
 
 
 9
 Id. at 799. See also Kopf v. Wing, 942 F.2d 265, 269 (4th Cir.1991), cert. denied, 112 S.Ct. 1179 (1992) (noting that municipal liability "is derivative of, but narrower than, the officers' ").
 
 
 10
 Heller is virtually on all fours with this case. Appellants attempt to distinguish Heller by arguing that the jury's verdict in this case might have reflected a determination that the officers were entitled to qualified immunity, rather than a finding that no constitutional violation occurred. But even if this argument is theoretically viable, see Hinton v. City of Elwood, 997 F.2d 774, 782-83 (10th Cir.1993); but cf. Kopf, 942 F.2d at 269, a question we need not and do not decide, it is factually unsupported in this case. Although a qualified immunity instruction was submitted to the jury, the jury filled out written interrogatories specifically indicating that neither of the officers violated any party's constitutional rights. A representative interrogatory and answer provide as follows: "Do you find from a preponderance of the evidence that defendant James Bowman violated the constitutional rights of plaintiff Howard Crumpe, Jr. and that such violation caused damage to said plaintiff? No." The interrogatories thus refute the contention that qualified immunity was the basis for the jury's verdict, bringing this case squarely within the ambit of Heller.[2]
 
 III
 
 11
 Appellants also challenge the district court's pretrial grant of summary judgment on the trespass claim of Claudia Simms, Rodney's mother.[3] This argument is meritless. Under Maryland law, "[i]t is not a trespass for an officer of the law to go upon another's premises in the line of his duty." Heinze v. Murphy, 180 Md. 423, 433, 24 A.2d 917, 922 (1942). Here, the officers were well within their rights in entering the Simms property to frisk the three men. Simms's threat to "light up" the officers plainly supplied reasonable suspicion to justify a stop and frisk, see Terry v. Ohio, 392 U.S. 1 (1968), and the officers were entitled to enter the front yard to effect the Terry stop. See Harbin v. City of Alexandria, 712 F.Supp. 67, 72 (E.D. Va.1989), aff'd, 908 F.2d 967 (4th Cir.1990) (table).
 
 IV
 
 12
 Finally, Appellants charge that the district court abused its discretion in permitting a toxicologist, Dr. Yale Caplan, to testify about Simms's drug use at the time of the shooting. We find no error in the court's ruling. The decedent's use of PCP was highly relevant. It directly supported Officer Bowman's testimony that Simms was wild and belligerent and possessed unusual physical strength--all of which had been placed in issue through the contrary testimony of Crumpe and Jennings. Thus, although Dr. Caplan's testimony no doubt had some negative effect on Appellants' case, the district court was well within its discretion in finding that the evidence was admissible under Fed.R.Evid. 403.
 
 V
 
 13
 For the reasons stated, the judgment of the district court is
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 The other officer had been granted summary judgment. 475 U.S. 796, 797 n.*
 
 
 [2]
 Despite the clarity of the interrogatories, appellants argue that the jury's answers could reflect a determination that the officers were entitled to qualified immunity. Pointing out that the district court instructed the jury that qualified immunity would preclude the recovery of damages, appellants speculate that the answer to the interrogatories might reflect a finding that a constitutional violation occurred but that damages were not warranted because of qualified immunity
 We are unwilling to give credence to this attenuated reasoning. Under Fed.R.Civ.P. 49(b), interrogatories accompanying a general verdict, such as those given here, need not cover all the issues in a case. See 9A C. Wright & A. Miller, Federal Practice and Procedure Sec. 2512, at 221 (1995). In this case, qualified immunity was at most a peripheral question. Defense counsel did not even mention it in closing argument, instead characterizing the case as a credibility battle. We thus read the interrogatory answers to mean exactly what they say: that the officers inflicted no constitutional harm.
 
 
 [3]
 Appellants attempt to frame their claim more broadly, as a challenge to all aspects of the summary judgment ruling which were dependent on a finding that the officers had reasonable suspicion to conduct a Terry stop. The trespass claim, however, was the only issue resolved via summary judgment with any legal connection to the Terry issue. In any event, the district court's conclusion on the Terry issue was clearly correct in light of the undisputed facts